## BYRNE, Adm'r, vs. McDOW.

1. In an action at law in the United States courts, a plea by an administrator setting up a decree of a State court by which the estate of his intestate was declared insolvent, is no bar to the rendition of judgment; but, when the estate is actually insolvent, the judgment at law will be enjoined in equity, and the creditor be compelled to come in and take his place with the other creditors of the estate.

2. But a decree of insolvency by a State court does not preclude a creditor, even in the United States courts of chancery, from denying the truth of the decree, and showing that the estate is solvent when its assets are fairly stated.

3. By the law of this State in 1840, a decree of insolvency might be obtained when the personal property alone was insufficient to pay all the debts, though the real estate might be more than sufficient for that purpose; but such a decree would not be conclusive evidence of the fact of insolvency in the United States chancery courts.

4. Where a judgment is rendered against an administrator in a Federal court, notwithstanding a plea of the insolvency of his intestate's estate, and execution thereon being returned no property found, the creditor institutes an action of debt on the judgment suggesting a *devastavit*, to enjoin which the administrator files a bill in equity, if the proof shows that the estate is really solvent, the bill will be dismissed, and the creditor allowed to pursue his remedy.

APPEAL from the Chancery Court of Mobile.

Heard before the Hon. J. W. LESESNE.

THE bill was filed by William L. McDow, the appellee, to enjoin a certain action at law instituted against him by the appellant, William Byrne, as administrator of Josiah Thomas, deceased. The case made by the bill is this:

One Jacob Alford, as principal, and one Achilles Edwards, surety, made their joint note to one Josiah Thomas, for the sum of $2875, payable on the 1st day of January, A. D. 1836.— The said makers of the note were then residents of Greene County, and the said Thomas a resident of the State of Virginia. The said Thomas brought suit on the note on the 12th of July, 1838, in the United States Court for the Southern District of Alabama, against the said Alford and the said Edwards, but the process was served only on the said Edwards;

the suit was discontinued as against Alford, and thenceforward prosecuted against the said Edwards alone.

Whilst the suit was pending against the said Edwards, and before judgment was rendered, he departed this life, leaving a will, and naming therein one Tasker his executor. Tasker proved the will, and entered upon the administration, but acted as such but for a short time, and the complainant was appointed administrator with the will annexed, and was regularly made a party to the above mentioned suit pending in the United States Court as aforesaid. At the December term of said court, 1846, a verdict and judgment were rendered in said cause in favor of the plaintiff, for the sum of $4,945. On this judgment execution issued against the complainant, as administrator *de bonis non* as aforesaid, and was returned *no property found.* Edwards died in Greene County, where he had resided, about the first of January, 1839, and the complainant was appointed administrator *de bonis non* on the 18th November, 1839, (the said Tasker having in the mean time also died prior to that date.)

The bill states that the estate of Edwards was insolvent; that complainant so reported it to the County Court of Greene, and that court, out of which the complainant's letters of administration had issued, so declared it on the 29th of June, 1840. This decree of insolvency was made before the complainant was made a party to the action at law above mentioned ; and the complainant pleaded this in bar of the recovery sought to be had against him in the said suit; but the plea was demurred to, the demurrer sustained, and judgment rendered against the complainant.

The bill further shows that one William Byrne, administrator of the said Thomas, who has also departed this life, has commenced, and is now prosecuting, in the Circuit Court of Mobile County, an action of debt against the complainant, founded on said judgment in the Circuit Court of the United States and the return of the execution issued on said judgment as aforesaid, and is seeking to make the complainant individually responsible for said debt, as for a *devastavit* of the assets of said estate.

The bill prays that this suit be perpetually enjoined, and that the creditor be compelled to come in with the other creditors in the Probate Court of Greene County, and be limited to his *pro*

*rata* share of the assets of said estate on a fair and just division of the same amongst the said creditors.

On the filing of this bill an injunction was granted, restraining the further prosecution of the action at law, and Byrne, the administrator of Thomas and plaintiff in the action at law, so enjoined, files his answer.

The answer admits all the allegations of the bill relative to the judgment obtained in the Circuit Court of the United States, and admits that the complainant, amongst other pleas, pleaded the insolvency of the estate of Edwards, and offered to support it by the decree of the County Court of Greene ; that said plea was demurred to, and the demurrer sustained.

The answer denies that the estate is in fact insolvent, but alleges the contrary to be the fact ; that after the sale of the lands belonging to the estate, there was a fund created which, with the personal assets of said estate, was more than sufficient to pay all of the debts ; that the proceeds arising from the sales of land alone were upwards of $9000, whilst the claims presented for payment, exclusive of the debt of the respondent, were only $8,379 16.

The answer also admits the institution of the suit in the Circuit Court of Mobile County against the complainant, with a view to make him liable individually for his debt, as for a *devastavit* of said estate; further admits that the note which was the original cause of action, was given by the said Alford and said Edwards to said Thomas on account of a debt of the said Alford, but alleges that, at the time the said note was executed, the said Edwards took from said Alford indemnity, on which the said complainant had realized a part at least, if not the whole, of his debt, and had thereby become a trustee for the respondent for the payment of the money ; and therefore the debt of the respondent could, in no manner whatever, be affected by the fact that the estate of the said Edwards was insolvent.

The answer further alleges that the complainant has interposed every obstacle in his power to the collection of this debt, has made no showing as to what assets he actually has in hand, and offered to pay nothing ; and therefore, in consequence of such conduct, he is not entitled to any equitable relief in this court ; that he conceals the actual state of the affairs of the estate, and has the funds belonging to the creditors in his hands, and there re-

Byrne, adm'r, v. McDow.

tains them with the design of defrauding the creditors and particularly this respondent; that complainant has made no showing of the fund in his hands as collateral security for this debt, but conceals the same; and charges that complainant has misapplied the fund, or retained it in his hands, refusing to appropriate it to the payment of the debt which it was provided to pay, and shielding himself all the while by a plea of insolvency, which is not true in fact, but is predicated upon a declaration of insolvency made upon a showing of the personal assets alone, without taking into account the real estate of the decedent, and which, when taken in, renders the estate entirely solvent.

The complainant offers the depositions of divers persons, who prove the insolvency and worthless character of many of the persons named in the inventory of notes and accounts due to the estate.

There is offered also a transcript of the record and proceedings from the Orphans' Court of Greene County, and by that transcript the following facts appear:

By the first inventory rendered by the complainant there appears in his hands, in the shape of notes and accounts, the sum of $9925 87. Many of these claims, however, are marked doubtful. It also appears that there was in his hands personal property, other than notes and accounts, which was appraised at and which sold for the sum of $2,921 75.

The debts of the estate at the same time are shown to be $13,707 46, in which is included the debt of the defendant.— The estate is declared insolvent by the court, and an order made to sell the real estate of the decedent for the purpose of paying debts. The commissioners appointed to sell make return of their proceedings, by which it appears that they sold real estate enough to amount to the sum of $9,334 45. The record also shows that on a certain judgment in favor of the estate and against Abraham Alford, for the sum of $4,455 29, an execution was levied upon some fifteen negroes, which were claimed by one Peppin; but what was the result of the claim suit, does not appear. On the same judgment, on another execution, there seem to have been sold lands of the defendant Alford, as follows: one tract for the sum of $552; another tract for $15 63; another tract for $82; one other tract for $400; amounting in all to the sum of $1049 63, leaving still some lands unsold for

want of bidders. These were subsequently sold for $19 70 ; and afterwards another slave was levied upon as the property of Alford, and claimed by one Coleman, and bond given to try the right ; but it nowhere appears in this record, what the result of this claim was.

On the final hearing, the Chancellor rendered a decree perpetually enjoining the defendant from the further prosecution of his action at law against the complainant, leaving him at liberty, however, to take his place among the other creditors of Edwards in the Orphans' Court of Greene County ; and this decree is here assigned for error.

GEO. N. STEWART, for appellant.

WM. G. JONES, *contra :*

1. It cannot be denied that the legislature of Alabama had full power to prescribe the manner in which the estates of decedents in Alabama shall be disposed of, and, in case of insolvency, that the creditors shall share in it equally and ratably. This was done by our acts of the legislature on that subject. It is certain that it never was designed to give a foreign creditor an advantage over a resident creditor—to prefer foreigners to our own citizens. There must be some remedy to prevent such gross injustice as that would be. Nor was it ever designed to let a foreign creditor compel an administrator to pay, out of his own pocket, a claim against an insolvent estate. If this bill cannot be maintained, one of these monstrous consequences would result. If litigation were carried on only in the State courts, no such consequence could ensue ; for, to any suit in such courts, the administrator could plead the insolvency of the estate, and thus, by the statute, each creditor would be compelled to submit his claim, along with the others, to the Orphans' Court, where all would share equally.

2. But a difficulty arises from a conflict of jurisdiction, where a foreign creditor sues, as in this case, in the United States courts. The constitution of the United States secures to a citizen of another State the privilege of suing a citizen of this State in the Federal courts, and he has a constitutional right to have his case tried there. But a plea of insolvency, according to our statute as it then stood, ousted the court in which it was

filed of jurisdiction of the case, and transferred it to the Orphan's Court, a State tribunal. Hence the Supreme Court of the United States decided, (and no doubt properly,) in the case of Suydam *et al.* v. Broadnax, 14 Peters 67, that such a plea was not good in the United States court. The consequence was, that, notwithstanding the State laws, the foreign creditor would get a judgment in that court for the whole amount of his claim, which might sweep the whole estate, and leave the home creditors nothing. This injustice obviously could not be tolerated.— There must certainly be some mode of preventing it. Accordingly, if the creditor proceeded on his judgment in the United States court to collect the whole in that court, or to make the administrator personally liable, that court would stop him by injunction from collecting more than his ratable share ; and this was expressly decided in Williams v. Benedict, 8 Howard's R. 107.

3. If the administrator of Thomas had sued on his judgment in the United States court, we could have stopped him in that court by injunction. But having gotten his judgment in that court, and execution thereon *de bonis testatoris*, and a return of *nulla bona*, he sued McDow on his judgment, as for a *devastavit*, in the Circuit Court of Mobile County. This court has decided that such a judgment and return was conclusive evidence of a *devastavit*, as against McDow, (Garrow v. Emanuel, 3 Stewart 285 ; Thompson v. Searcy, 6 Porter 393 ;) and subjected him to a judgment *de bonis propriis* for the whole amount. The monstrous fraud and injustice of this is obvious ; and there was no remedy at law. It was clearly a case for the interposition of equity.—Williams v. Benedict, 8 How. R. 107. And the decree of the Chancellor was perfectly correct : it does not deprive the creditor of any right. He had no right to anything but a *pro rata* share of Edwards' estate, and that right the decree gives him liberty to assert in the proper forum.

4. The record does not show that the sale of lands made the estate solvent; directly the contrary is shown : it was and is insolvent.

GIBBONS, J.—It seems to be the settled doctrine of the United States courts, in actions at law on contracts, to disregard pleas of the insolvency of the estate against which the

*actions* are pending. Such pleas, when founded upon decrees of courts of probate, or courts of ordinary of the several States, constitute no defence against the recovery of a judgment on the debt in suit.—Suydam *et al.* v. Broadnax *et al.*, 14 Peters 67. But, whilst this is true of the United States courts of law, it is otherwise in their courts of equity, and a judgment rendered against such an estate, notwithstanding the interposition of a plea of insolvency, will be enjoined at the instance of the representative, and the judgment creditor be compelled to take his place with the other creditors of the estate.—Williams v. Benedict *et al.*, 8 Howard 107. Were it otherwise, the foreign creditor would have a decided advantage over the creditor at home, and the estate of an insolvent, instead of being distributed qually amongst all of the creditors, would be appropriated in many cases exclusively to the payment of a single creditor abroad to the exclusion of all others at home.

We say nothing of the policy of the decisions of that court, nor would we attempt to defend the expediency of having one rule in courts of law in respect to insolvent estates, and another in equity. As the remedy of the creditor in those courts, for the collection of the debt sought to be recovered, must eventually depend upon the fact whether the estate is solvent or insolvent, we can see no good reason why that question could not as well, (if not with much more propriety,) be tried by a jury in a court of law, as to be tried by a court of chancery. We think i t clear that, even in a United States chancery court, the mere fact that an estate had been decreed to be insolvent by a State court, would not preclude the creditor from denying the truth of such decree, or from showing that notwithstanding such decree the estate was entirely solvent, when all its assets are fairly stated. It is in cases of actual insolvency that the United States chancery courts entertain bills to enjoin judgments at law ; but, if such insolvency is apparent only, and not actual, we cannot suppose that these courts would permit themselves to be divested of jurisdiction, and their suitors sent to another, and a State forum, to seek their remedies.

It is unnecessary that we should decide whether or not the chancery court could look behind the decree of insolvency rendered by the State court, on any matter existing anterior to the decree, except actual fraud in its procurement. We deem it en-

tirely clear that, if, by events occurring subsequent to the rendition of the decree of insolvency, the estate has become able to pay its debts, a court of chancery would not be precluded by the decree merely from such investigation.

It is by applying an analogous rule to the case before us that we arrive at our conclusions.

The law, as it stood in Alabama in 1840, when the estate of Edwards was declared insolvent, would enable the personal representative to obtain a decree of insolvency on an estate worth much more than it owed. All that the executor or administrator had to do was, to show to the court that the personal property of the estate was not sufficient to pay the debts, and a decree of insolvency was rendered almost as a matter of course, although the real estate of the decedent might have been sufficient to render the estate not only solvent but rich. In such cases, to allow the decree of the State court to divest the United States chancery court of its jurisdiction, would be unreasonable, and the party setting up the insolvency of the estate in that court could not rely upon the decree of the State court, rendered under such circumstances, as conclusive evidence of the fact of insolvency. If that decree was inconsistent with the actual fact, the creditor would, in our opinion, have the right to make it appear; and if it was shown that the estate was in fact solvent, notwithstanding the decree in the State court, the creditor would not be driven to a State forum to prosecute his claim, but the bill seeking to enjoin the judgment at law would be dismissed.

In the case at bar, if the estate of Edwards is in fact insolvent, as it is alleged to be in the bill, and as it was decreed to be in the Orphans' Court of Greene County, then it would be obviously unjust and inequitable to allow the respondent to proceed in his action at law against the complainant, and thereby subject him individually to a liability for the debt; but on the other hand, if such insolvency does not in fact exist, notwithstanding the decree of the Orphans' Court of Greene County, then we see no reason why the respondent should be deprived of the remedy which he has adopted for the recovery of his debt.

In the application of the complainant to have the estate of Edwards declared insolvent, and for an order to sell the real

estate, he shows that the amount of notes, accounts and evidences of debt in his hands, was $9925 87, and that the proceeds of the sale of the personal property, other than notes &c., in his hands, amounted to the sum of $2921 75 ; making an aggregate of personal assets of $12,857 62. Of the first item, made up with notes, accounts &c., many of them are represented as doubtful. As a part of the same showing, the debts owing by the estate are shown to be $13,707 46, thus showing the estate to be insolvent, as the law then stood, that is, the personal assets were not sufficient to pay the debts. Both parties, on the hearing before the Chancellor, seem to have relied upon, and offered in evidence a transcript of the record and proceedings of the Orphans' Court of Greene County ; and by said transcript it appears, that an order was obtained for the sale of the lands of said decedent, commissioners appointed to make said sale, and their report of their action as such commissioners. They report that they have sold lands amounting to the sum of $9334 45, and have turned the proceeds over to the administrator. It is further shown by proof that, on one judgment belonging to the estate against one Alford, the complainant received in cash, from the sale of lands levied on under execution, upwards of $1000. That judgment was for the sum of $4455 29 ; and besides the lands sold, there were levied upon, as the property of said Alford, some fifteen or sixteen slaves, which were claimed by third persons, and bond given for the trial of the right of property. Whether any cash has been realized from these trials of the right of property the record does not disclose, nor does it appear what, if any thing, has ever been collected from the other notes or accounts belonging to the estate.

Here, then, we see an aggregate of cash amounting to upwards of $13,256 20 has gone into the hands of the administrator, with which to pay a debt $13,707 46, leaving entirely unaccounted for the balance of the notes and accounts amounting to upwards of $5000, and also the claim suits for the negroes on the large judgment against Alford. We think it fair to presume, that the complainant has or ought to have collected something on the notes and accounts other than that of the judgment against Alford ; and in his silence upon the subject, when he alone is the most capable of rendering, and is in duty bound to

render the information, we think it but reasonable to presume that he has collected enough at least to render the estate solvent, and to pay off all its debts.

When the complainant's bill is examined with reference to the proof in the cause, there is, we apprehend, some cause for the allegation in the defendant's answer, that the complainant has sought by every means in his power to mystify and conceal the facts in relation to the estate of the said Edwards; for it must be confessed that, with the means of information in his hands in reference to the affairs of said estate, the bill gives but little light as to its true condition. Our conclusion is, from the proof in the cause, that the estate of Edwards is solvent, and has been so since the sale of the lands belonging to said estate; and the estate being solvent, the complainant has no right to call upon a court of equity for relief, but the defendant should be permitted to pursue the remedy that he has selected for the recovery of his debt.

It follows, therefore, that the Chancellor erred in his decree, and it is here reversed, the injunction ordered to be set aside, and the complainant's bill dismissed, with the costs of this court and of the court below.